J-S66013-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| LERIN DUKES, | |
| Appellant | No. 1951 WDA 2016 |

Appeal from the Judgment of Sentence Entered November 8, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0003643-2016

BEFORE: BENDER, P.J.E., DUBOW, J., and PLATT, J.[*]

MEMORANDUM BY BENDER, P.J.E.: FILED DECEMBER 29, 2017

Appellant, Lerin Dukes, appeals from the judgment of sentence of, inter alia, just under one year to just under two years' imprisonment, imposed after he was convicted of sexual assault, 18 Pa.C.S. § 3124.1, and simple assault, 18 Pa.C.S. § 2701(a)(1). We affirm.

The trial court summarized the procedural history and factual background of this case as follows:

## BACKGROUND

* * *

[Appellant] was charged with the following crimes in connection with an incident which occurred on or about February 23, 2016:

a. Count 1: One count of 18 Pa.C.S. § [3121](a)(1) Rape by Forcible Compulsion;

_____

[*] Retired Senior Judge assigned to the Superior Court.

   b. Count 2: One count of 18 Pa.C.S. § 3124.1 Sexual
      Assault;

   c. Count 3: One count of 18 Pa.C.S. § 2902(a)(1)
      Unlawful Restraint with Risk of Serious Bodily Injury;

   d. Count 4: One count of 18 Pa.C.S. § [2701](a)(1)
      Simple Assault; and

   e. Count [5]: One count of 18 Pa.C.S. § 2706(a)(1)
      Terroristic Threats with Intent to Terrorize Another.

Following a non-jury trial held on August 16[-]17, 2016, … this [c]ourt found [Appellant] guilty of Count 2, Sexual Assault and Count 4, Simple Assault. [Appellant] was sentenced on November 8, 2016. On November 18, 2016[, Appellant] filed a Post-Sentence Motion[,] which this [c]ourt denied on November 23, 2016.

On December 22, 2016, [Appellant] filed a []Notice of Appeal to the Judgment of Sentence imposed on November 8, 2016.

On January 24, 2017, [Appellant] filed his Concise Statement of Matters Complained of on Appeal.

* * *

FINDINGS OF FACT

Based upon the testimony and evidence presented at the August 16, 2016, non-jury trial, the [c]ourt makes the following findings of fact.

[Appellant] and [Victim] are married individuals. On or about February 23, 2016, [] Victim and her children were residing [at a specific address in] Pittsburgh, Pennsylvania. At this time[, Appellant] was residing at the Renewal Center. On or about February 23, 2016, at approximately 10:30 a.m., [] Victim was in her living room of [her residence] when [Appellant] entered the residence in violation of a no-contact order with [] Victim. Upon [Appellant's] entry, the couple began to argue and physically fight. The fight between the couple began on the first floor of the residence and moved to the second floor when [Appellant] pushed [] Victim up the stairs "unwillingly." Once on the second floor of the residence, [Appellant] led [] Victim to the "second" bedroom and removed her clothes and engaged in sexual intercourse with [] Victim. [] Victim testified that she did not want to engage in

sexual intercourse with [Appellant].[1]  [] Victim testified that she scratched and bit [Appellant] during the course of sexual intercourse.  [] Victim testified that she then advised [Appellant] that she was "not angry" and "everything was fine" and "he could go on his way" because she did not want him to know she was going to call the police.  [Appellant] subsequently left the residence and [] Victim called 911 to report [him].

[1] The [c]ourt notes that [] Victim recanted some of her testimony at the bench trial, particularly with regard to the force used by [Appellant] and her vocalizing her non-consent, including screaming for help, from the testimony she provided at the preliminary hearing.  However, the [c]ourt found her recanting to be unpersuasive and not credible.  [] Victim's demeanor while testifying showed clear signs of fear [of] and intimidation [by Appellant].

Trial Court Opinion (TCO), 2/6/2017, at 1-4 (internal citations omitted).

As mentioned supra, Appellant filed a timely notice of appeal and a timely, court-ordered Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal.  In response, the trial court issued a Rule 1925(a) opinion.  Presently, Appellant raises the following issues for our review:

1. Did the trial court err when it convicted Appellant of the crime of Sexual Assault (18 Pa.C.S. § 3124.1) based on its erroneous belief that Appellant could be said to have committed that crime based on evidence that he engaged in sexual intercourse with the complainant and the lack of the evidence that the complainant had consented to the act of intercourse — with such a construction of § 3124.1 erroneously treating the absence-of-consent element as an absolute liability element?

2. Did the trial court err when it permitted the Commonwealth to introduce evidence, at Appellant's non-jury trial, of prior assaultive acts committed by Appellant against the complainant (his wife) on several different dates, with admission of this evidence violating Rule 404 of the Pennsylvania Rules of Evidence?

3. Should this Court grant Appellant relief from the aforementioned errors by vacating his convictions and

sentences for the crimes Sexual Assault and Simple Assault be vacated [sic], and remanding his case to the court below for a new trial on those charges?

Appellant's Brief at 3.[1, 2]

First, Appellant claims that "[t]he trial court erred when it convicted Appellant of … sexual assault (18 Pa.C.S. § 3124.1) based on its erroneous belief that Appellant could be deemed to have committed that crime if he had engaged in sexual intercourse with his wife without her consent even if he was unaware of her non-consent." Appellant's Brief at 25 (unnecessary capitalization omitted).[3] Specifically, Appellant asserts that, during a side-bar discussion at trial, the trial court represented that "one can be convicted of a

_____

[1] Initially, we note that Appellant has failed to provide a completed table of citations, despite receiving three extensions from this Court to file his brief. See Pa.R.A.P. 2174(b) ("All briefs shall contain a table of citations therein, arranged alphabetically, which shall be set forth immediately following the table of contents."). While we admonish Appellant for this omission, "[an a]ppellant's failure to include a table of citations is a relatively minor deficiency which does not substantially impinge upon our ability to engage in effective and meaningful appellate review. We may therefore disregard this irregularity." See Joshi v. Nair, 614 A.2d 722, 725 (Pa. Super. 1992) (citations omitted).

[2] We do not separately address Appellant's third issue, as he incorporates it into his first and second issues, stated supra.

[3] The sexual assault statute at issue states the following:

> Except as provided in section 3121 (relating to rape) or 3123 (relating to involuntary deviate sexual intercourse), a person commits a felony of the second degree when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent.

18 Pa.C.S. § 3124.1.

sex offense even if he or she has not been informed that his or her sexual partner does not wish to engage in sexual intercourse." Id. Instead, Appellant contends that "one only commits [s]exual [a]ssault if he or she engages in sexual relations with a non-consenting partner and he or she has been informed of the partner's lack of consent (or, at the least, recklessly disregards the risk of non-consent)." Id. at 29 (emphasis in original).[4]

The side-bar discussion that Appellant complains of occurred as follows:

[The Commonwealth:] Was [Appellant's] penis in your vagina?

[Victim:] Yes.

[The Commonwealth:] Did you want that to happen?

_____

[4] Appellant elaborates that:

When mens rea language is omitted from a criminal statute, courts are to construe that statute as a crime having the default mental state listed in [18 Pa.C.S.] § 302(c), not as an absolute liability crime. Subsection 302(c), parenthetically, states that

[w]hen the culpability sufficient to establish a material element of an offense is not prescribed by law, such an element is established if a person acts … [at least] recklessly with respect thereto.

18 Pa.C.S. § 302(c). The default mental state is thus the mental state of recklessness. E.g., Commonwealth v. Ludwig, 874 A.2d 623, 630 (Pa. 2005) ("The statutory default provision of § 302(c) offers that unless prescribed by law, culpability is established if a person acts … at least recklessly[.]"). The court below should have held that the omission of mens rea language from § 3124.1 meant that the non-consent element took the mens rea of recklessness, and not that it was an element that required no culpable mental state at all.

Appellant's Brief at 30-31 (original brackets omitted).

[Victim:] No. But I don't — I didn't express what I wanted clearly, so the miscommunication. I don't want to be up here testifying. I think that I've taken it extreme, I've taken this too far, and I do not want to testify anymore. I've changed my mind, and I don't think that — I did not express what I wanted. I don't think he should be charged with the conviction, and I don't think he should be charged with any of this. I don't think that it's fair, and I'm sorry that I went through all of these steps. So I was not raped. I committed perjury. I was not raped.

[Appellant's attorney]: Your honor, may we approach?

[Trial court]: You may.

(Discussion at side-bar as follows:)

[Appellant's attorney]: At this point, I just wanted, and for [Victim's] own legal protection, to stop where this was going and get any Counsel for her I suppose. I would also at this time make a motion for a judgment of acquittal.

[Trial court]: On what basis?

[Appellant's attorney]: Count 1[, rape by forcible compulsion,] and [Count] 2[, sexual assault].

[Trial court]: On what basis?

[Appellant's attorney]: Her testimony, You Honor.

[Trial court]: On what part of her testimony would you want a judgment of acquittal?

[Appellant's attorney]: Where she says that she did not communicate to [Appellant] that she was unwilling to have sex and that she does not want to go forward with the prosecution … and how she said she was not raped.

[Trial court]: She didn't say she wasn't raped, but I'll let [the Commonwealth] expand.

[The Commonwealth]: It's not this attorney's decision whether or not this woman, this witness, needs a lawyer. It's Your Honor's decision.

Secondly, I didn't have an opportunity to complete my direct examination. It's going to include a statement that she fought him, she kicked him, she bit him and she scratched him, and that

will be evident not only from her but also from the medical records.

[Trial court]: And from the police officer?

[The Commonwealth]: And from the police officer.

[Appellant's attorney]: Your Honor, we could read back into the record, but I do believe I correctly wrote down and heard her say, I was not raped.

[Trial court]: My recollection — and again, the record will speak for itself — that she didn't use those words. I think that she said she didn't want to have sexual intercourse. She didn't communicate that to [Appellant], and my understanding is that the elements of the crime don't encompass consent. I mean, you can commit a rape if it is not articulated consent. That's my understanding of the statute.

[The Commonwealth]: I totally agree with you. It shows she was forced. She was forced upstairs, forced into the bedroom, she's undressed, and he inserts his penis into her vagina. That's forcible compulsion rape and sex assault. The consent does not have to be verbal. It can be the way a person acts. A reasonable person can assume that this woman did not want to have sexual intercourse under those circumstances with [Appellant].

[Trial court]: Right. Well, I get what your objection is. I'm not sure right now — I will deny your motion. I think right now, there's sufficient evidence on the record certainly in a light most favorable to the Commonwealth. They can meet their burden….

N.T., 8/15/2016-8/17/2016, at 39-43. See also Appellant's Brief at 26-28.

Although Appellant maintains that the above-cited exchange reveals that the trial court regarded the communication of Victim's non-consent as irrelevant, see Appellant's Brief at 25, the trial court conversely explained that its "statement to counsel at side-bar merely stated that the [c]ourt did not believe a victim of sexual assault or rape needs to verbalize non-consent in order for the Commonwealth to establish and prove non-consent on the part

of a victim." TCO at 5. Based on our review of the transcript, we are not convinced that the exchange supra establishes that the trial court misunderstood or misapplied the relevant law by interpreting the statute as having no mens rea requirement at all, as Appellant contends. See Appellant's Brief at 2.

Further, the Commonwealth discerns that the trial court indeed applied the correct mens rea in reaching the verdict, by "credit[ing] [V]ictim's prior testimony, which established that she had communicated her non-consent to [A]ppellant, thereby satisfying the requirement that [A]ppellant acted at least recklessly with respect to her non-consent, over her in-court testimony to the contrary." Commonwealth's Brief at 7. In support, it cites the trial court's findings of fact, where it noted that,

> Victim recanted some of her testimony at the bench trial, particularly with regard to the force used by [Appellant] and her vocalizing her non-consent, including screaming for help, from the testimony she provided at the preliminary hearing. However, the [c]ourt found her recanting to be unpersuasive and not credible. [] Victim's demeanor while testifying showed clear signs of fear [of] and intimidation [by Appellant].

TCO at 3 n.1; see also Commonwealth's Brief at 10-13. Thus, the Commonwealth asserts that the trial court "did not find [V]ictim's trial testimony 'irrelevant' but instead found it incredible, in light of her prior testimony under oath." Commonwealth's Brief at 12-13 (emphasis in original). We agree.

We last observe that, despite Victim's recantation of certain testimony at trial regarding the expression of her lack of consent, the trial court

nevertheless found, based on her trial testimony, that Appellant "pushed the Victim up the stairs 'unwillingly[,]'" and "[o]nce on the second floor of the residence, [Appellant] led ... Victim to the 'second' bedroom and removed her clothes...." TCO at 3 (citing N.T. at 36, 37-39). It additionally stated that "Victim testified that she scratched and bit [Appellant] during the course of sexual intercourse." Id. (citing N.T. at 44). Accordingly, this evidence further supports an inference that Appellant, at a minimum, recklessly disregarded the risk that Victim did not consent. Thus, based on the foregoing, we do not conclude that the trial court treated the relevant statute as having no mens rea requirement at all, nor did it err in convicting Appellant of sexual assault on this basis.

Second, Appellant alleges that the trial court "erred when it permitted the Commonwealth to introduce evidence, at Appellant's non-jury trial, of prior assaultive acts committed by Appellant against [Victim] in this case on multiple prior occasions." Appellant's Brief at 44 (unnecessary capitalization and emphasis omitted).[5] Appellant "submits that the admission of this

_____

[5] The Commonwealth described the prior assaults evidence as follows:

> 3. [Appellant] previously beat [V]ictim on January 4, 2012[,] at a different Pittsburgh, [Pennsylvania] address she and her children shared with [Appellant]. The physical abuse included slapping her in the face, choking her, spitting on her, biting her, pulling her hair, dragging her across the floor and down the stairs and threatening to kill her and her children.

> 4. [O]n May 16, 2013 at 4 [a.m.], [Appellant] came unexpectedly to where [V]ictim was staying in Northview Heights with her

- 9 -

evidence was improper, inasmuch as prior crimes evidence cannot ever be

admitted to show a violent propensity, inasmuch as the evidence was not and

_____

children. When [Appellant] entered[,] he defecated on the floor, verbally abused her, physically assaulted her by kicking her and forcing her out of the residence. Victim's screams alerted her neighbors and [Appellant] dragged her back into the residence by her hair and began choking her. Victim's neighbors called 911.

5. [O]n September 5, 2013, [Appellant] accepted an invitation from [Victim] to visit her.... When [Appellant] arrived, [Victim] was asleep and [Victim's] son opened the door for [Appellant]. [Victim] woke up and when she went downstairs [she] began arguing with [Appellant]. [Appellant] punched her in the face and choked her with his arm. [Victim] did not call the police and went to sleep. Later that day [Victim] asked [Appellant] to leave and [he] refused. Victim called police. [Appellant] was arrested by responding police officers who observed fresh scratch marks on [Victim's] face.

6. On April 23, 2014[, V]ictim and [Appellant] were together at [V]ictim's residence in Northview Heights. [Appellant] initiated a verbal argument with [V]ictim and hit her. When [V]ictim yelled for help[, Appellant] started punching and spitting on her. [Appellant] also pushed [V]ictim to the floor and used his arm to restrict her ability to breathe and prevent her from shouting for help. Victim was able to break free after [Appellant] threatened to kill her. Victim attempted unsuccessfully to escape by climbing through a window. [Appellant] grabbed her and forced her back onto [sic] the apartment. [Appellant] remained in the apartment until a security guard knocked on the apartment door.

See Commonwealth's Notification of Intention to Present Evidence of Other Crimes, Wrongs, or Acts Pursuant to Rule 404(b)(2) of the Pennsylvania Rules of Evidence, 7/19/2016, at 3-5 (unnumbered pages; internal citations omitted). The Commonwealth additionally notes that Victim "filed for Protection From Abuse [PFA] Orders following several of the above mentioned incidents." Id. at 5.

could not be admitted for another and proper purpose, and inasmuch as the evidence was in any event unduly prejudicial." Appellant's Brief at 44.

Initially, we observe that:

The admissibility of evidence is a matter for the discretion of the trial court and a ruling thereon will be reversed on appeal only upon a showing that the trial court committed an abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

Commonwealth v. Yocolano, 169 A.3d 47, 53 (Pa. Super. 2017) (citation omitted).

Appellant argues that the trial court violated Pennsylvania Rule of Evidence 404(b) by admitting the prior assaults evidence. Rule 404(b) sets forth:

(b) Crimes, Wrongs or Other Acts.

(1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) Permitted Uses. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.[6] In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

(3) Notice in a Criminal Case. In a criminal case the prosecutor must provide reasonable notice in advance of trial, or during trial

_____

[6] We note that Rule 404(b)(2) "contains a non-exhaustive list of purposes, other than proving character, for which a person's other crimes[,] wrongs or acts may be admissible." See Comment to Pa.R.E. 404.

- 11 -

if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence the prosecutor intends to introduce at trial.

Pa.R.E. 404(b).

In addition to the exceptions listed above, "[a]n exception to Rule 404(b) exists that permits the admission of evidence where it became part of the history of the case and formed part of the natural development of facts. This exception is commonly referred to as the res gestae exception." Commonwealth v. Ivy, 146 A.3d 241, 251 (Pa. Super. 2016) (citations omitted).

Further, in the case sub judice, the trial court explained its rationale for admitting evidence of the prior assaults as follows:

> The Pennsylvania Superior Court[] ha[s] consistently held "evidence of prior abuse between a defendant and an abused victim is generally admissible to establish motive, intent, malice, or ill-will." [] Ivy, 146 A.3d [at] 252 ... (internal citations omitted). Additionally, Pennsylvania [c]ourts have held such evidence of prior abuse is admissible to rebut a [d]efendant's defense alleging the victim consented to such sexual acts. Id. and see Com[monwealth] v. Jackson, 900 A.2d 936 (Pa. Super. 2006). Furthermore, such evidence has been admissible to show the history of the case between a defendant and a victim. See generally, Ivy, supra.
>
> Nevertheless, as [Appellant] elected to have this case tired [sic] in a non-jury bench trial, any potential prejudice the evidence of his prior abuse of the victim was "diminished" if not eliminated. See Com[monwealth] v. O'Brien, 836 A.2d 966, 968 (Pa. Super. 2003[)] (["]Moreover, because [the defendant] has chosen to be tried by a judge without a jury, the potential for undue prejudicial effect is diminished.["]).
>
> This [c]ourt did not consider the prior assaultive acts evidence in arriving at the verdict. This [c]ourt believes there was sufficient evidence independent of the prior abuse evidence to sustain [Appellant's] convictions of [s]exual [a]ssault and [s]imple

- 12 -

[a]ssault. The [c]ourt notes that [Appellant] does not raise [challenges to] the sufficiency or weight of the evidence on appeal and as such the [c]ourt will not address [them].

TCO at 4-5 (original brackets omitted).

Despite the trial court's reasoning, Appellant advances three arguments as to why the trial court abused its discretion in admitting the prior assaults evidence. Appellant first complains that "the trial judge authorized the admission of prior crimes evidence so that the prosecution could establish his propensity for committing acts of violence." Appellant's Brief at 47. In support of this proposition, he refers to the following discussion between the parties' counsel and the trial court pertaining to the admission of the prior assaults evidence:

[The Commonwealth]: Your Honor, the purpose of this [evidence] is to enable the trier of fact to evaluate the entire history between [V]ictim and [Appellant]. Much of the relationship was violent, and it's repetitive, and it shows that ... [V]ictim ... was subjected to abuse, verbal, physical, threatened with physical harm, restrained [in] her movement, all of which, Your Honor, created an atmosphere of fear [o]n the part of [Victim].

Then it escalated as we move forward to February 23rd of 2016. Not only did [Appellant] repeat his common scheme to beat this woman, to threaten this woman, but it then advanced further to the point of sexual abuse, and the man is charged with rape and sex assault, terroristic threats and simple assault. So, Your Honor, the trier of fact must understand the mindset of [Victim] and also the mindset of [Appellant] when hearing and analyzing the Commonwealth's evidence.

So I think, Your Honor, the [c]ourt is able to determine the value of the evidence, to consider it or not to consider it in determining guilt or innocence on the alleged sex assault charge.

[Trial court]: [Appellant's attorney], do you want to respond?

* * *

- 13 -

[Appellant's attorney]: What person could possibly hear that [Appellant] is alleged or anybody is alleged to have beaten and acted violently toward a person and not [allow it to] have a very real impact on their assessment of that person? It's extremely emotional. It's extremely prejudicial, and I don't know that I could.

[Trial court]: Isn't that true of every [Rule] 404(b) argument if in fact you are correct?

[Appellant's attorney]: It absolutely is.

[Trial court]: You're saying it's, under the Constitution, not permissible, shouldn't be allowed?

[Appellant's attorney]: I may as well throw that argument in while I am here. I'm only being half facetious here. It really is prejudicial, and I hate that the Commonwealth is ever allowed to use anything my clients have done in the past as evidence that they have done it or would be more inclined to do it or in this case had a common plan.

[Trial court]: Well, the argument is not that it's prejudicial. The argument that you should be making is that its prejudicial value outweighs its probative value, and you don't think that the [c]ourt or fact finder as a juror would be able to cure an instruction or portion of the instruction [sic], would be able to figure out that in fact the evidence is not offered to prove that he did this crime or these crimes but to show essentially a motive or intent or absence of mistake, identity.

I mean, really what the Commonwealth's asking here is that this evidence is offered to prove that he has a propensity to commit these types of acts. Again, I've not heard the testimony in the case and maybe, you know, this will be something that will come up in the course of the trial — I can't imagine what — that would make me rethink this, but the way it's presented right now and the argument that [the Commonwealth] is making on behalf of the Commonwealth makes me believe that it is admissible.

* * *

All right. So here's what I'm going to do. I'm going to allow the evidence, of course, for the limited purposes as [the Commonwealth] has articulated, and if it deviates from that, then

you can certainly raise that at trial and I will take that under consideration and make a decision.

Id. at 5-9.

While Appellant claims that the trial court's above remarks indicate that it misapplied the law by admitting the prior assaults evidence to show Appellant's propensity for violence in contravention of Rule 404(b),[7] the Commonwealth points out that the trial court ultimately concluded its statement by allowing the evidence for the "limited purposes" articulated by the Commonwealth, which included elucidating the entire history between Victim and Appellant, demonstrating the atmosphere of fear experienced by Victim, illustrating the common scheme of Appellant's beating Victim, and establishing the mindset of Appellant. See Commonwealth's Brief at 17 (citing N.T. at 5-6, 9). Furthermore, immediately before its propensity remark, the trial court made a comment on whether a fact-finder could "figure out that the evidence is not offered to prove that he did this crime or these crimes but to show essentially a motive or intent or absence of mistake, identity." N.T. at 8. When looking at the transcript as a whole, in addition to the trial court's Rule 1925(a) opinion, we do not conclude that the trial court improperly used the prior assaults evidence to show Appellant's propensity for violent behavior.

In his second argument, Appellant advances that, even if the trial court did not permit the prior assaults evidence to show Appellant's violent

_____

[7] We agree with Appellant that the prior assaults evidence is not admissible as proof of his criminal predisposition, namely his propensity for committing acts of violence. See Appellant's Brief at 47 (citations omitted).

tendencies, the trial court nevertheless should not have admitted such evidence as there was no other permissible purpose under Rule 404(b)(2) for it. See Appellant's Brief at 50. We are not persuaded.

As mentioned by the trial court supra, there is a myriad of cases supporting the admission of evidence of prior abuse between a defendant and a victim to establish malice or ill-will, as well as to show the nature of a relationship and lack of consent. See Commonwealth v. Johnson, 42 A.3d 1017, 1027 (Pa. 2012) ("Prior acts are admissible to show ill will, motive, malice, or the nature of the relationship between the defendant and the decedent."); Commonwealth v. Drumheller, 808 A.2d 893, 905 (Pa. 2002) ("All four PFA petitions are relevant to demonstrate what the Commonwealth accurately characterizes as 'the continual and escalating nature of [the defendant's] abuse of [the victim].' The challenged evidence shows the chain or sequence of events that formed the history of the case, is part of the natural development of the case, and demonstrates [the defendant's] motive, malice, intent, and ill-will toward [the victim].") (citation omitted); Yocolano, 169 A.3d at 55 ("[W]e discern no abuse of discretion in allowing evidence of [the victim's] and [the a]ppellant's relationship, including the PFA issued in favor of [the victim] and against [the a]ppellant. The trial court determined that the incident at issue logically grew out of the prior set of circumstances, proof of which was necessary to explain the complete story."); Ivy, 146 A.3d at 252 (determining that the victim's PFA order against the appellee was admissible because "[a]s the victim in this case, [the victim's] PFA order against [the

a]ppellee is important to establish the history of [the victim's] relationship with [the a]ppellee...."); Commonwealth v. Powell, 956 A.2d 406, 419-20 (Pa. 2008) (determining that evidence of prior bad acts "was offered not to show [the] appellant's propensity to crime, but in the context of establishing the family environment and relationships among [family members]" and "show[ed] both [the] appellant's intent and malice and the nature of his relationship with [the victim]"); Jackson, 900 A.2d at 940-41 ("[T]he evidence established that ... police officers responded to the parties' residence for numerous incidents where [the a]ppellant had beaten the victim, several times in violation of an existing PFA order. ... The challenged evidence shows the chain or sequence of events which formed the history of the case, is part of the natural development of the case, and demonstrates [the a]ppellant's motive, malice, intent, and ill-will toward the victim."); Commonwealth v. Barger, 743 A.2d 477, 481 (Pa. Super. 1999) ("[E]vidence of [the a]ppellant's prior abusive and intimidating behavior directed at [the] victim and [the] victim's mother were properly admitted to prove [the victim's] lack of consent to [the a]ppellant's sexual contact with her.").  Accordingly, we conclude that the trial court did not abuse its discretion in admitting the prior assaults evidence to establish the history of Appellant and Victim's relationship, including why she feared Appellant and was unwilling to have sex with him.

Finally, Appellant argues that "[e]ven if the evidence was admissible as a threshold matter, it nevertheless ought to have been excluded since its probative value did not outweigh its great potential for prejudice."  Appellant's

Brief at 57 (unnecessary emphasis omitted).  We disagree.  As discussed above, the prior assault evidence was probative of the relationship between Appellant and Victim.  Further, the fact that Appellant "chose[] to be tried by a judge rather than a jury minimizes, if not eliminates, the potential for prejudice."  O'Brien, 836 A.2d at 972 (citations omitted).[8]  Accordingly, we do not conclude that the trial court abused its discretion in admitting the evidence of Appellant's prior assaults of Victim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  12/29/2017

_____

[8] In any event, the trial court explained in its opinion that it "did not consider the prior assaultive acts evidence in arriving at its verdict[,]" which suggests that any error made by the trial court in admitting it would be harmless.  TCO at 5.