J-S05011-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TODD ALAN GRAEFF | : | |
| | : | |
| Appellant | : | No. 1257 EDA 2025 |
| | : | |

Appeal from the Judgment of Sentence Entered December 17, 2024
In the Court of Common Pleas of Monroe County
Criminal Division at No(s):  CP-45-CR-0000523-2023

BEFORE:   PANELLA, P.J.E., KING, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.E.:                    **FILED APRIL 30, 2026**

Todd Alan Graeff appeals from the judgment of sentence entered in the Court of Common Pleas of Monroe County after he was convicted of indecent assault, 18 Pa.C.S.A. § 3126(a)(1). Graeff challenges the sufficiency and weight of the evidence. We affirm.

We glean the following facts from the certified record. Graeff and Kimberly Geyer worked with each other for about fifteen years at the Manor Township Police Department. Since about 2007, Graeff served as the chief of police. During Graeff's tenure, Geyer was promoted to lieutenant and was second in command.

_____

[*] Retired Senior Judge assigned to the Superior Court.

Graeff invited Geyer to attend a multi-day police conference at Kalahari Resort in Monroe County and to stay overnight with him. Geyer declined Graeff's invitation to stay overnight but agreed to attend during the daytime for one day. Geyer attended the conference on July 25, 2022. After some morning events, Graeff and Geyer decided to go to the water park together.

At trial, Geyer testified to the following. Before going to the water park, Geyer used the bathroom in Graeff's room to change into her bathing suit. When she finished getting changed Graeff told her, "I thought you would change in front of me." N.T., 8/14/24, at 37. Geyer stated, "just because some of the guys think I sucked your dick to get promoted, doesn't mean it's true." *Id.* Graeff responded, "let's prove [th]em right." *Id.* This comment made Geyer uncomfortable, but she laughed it off and the two proceeded to go to the water park for a few hours.

At the water park, Graeff suggested that they go down a double tube water slide together. Graeff sat behind Geyer and, despite there being handles on the tube, he told her that "I'm [going to] be grabbing you the whole way down the slide[.]" *Id.* at 38. Geyer remarked to the lifeguard, "he's probably going to grab my boobs[.]" *Id.* When they went down the water slide, Graeff put both of his arms across Geyer's shoulders and "grabb[ed]" and "massag[ed]" Geyer's breasts while saying "oh yeah, oh yeah, oh yeah[.]" *Id.*

Geyer was "mortified" about what happened. *Id.* She went into "survivor mode" for the remaining time she was at the water park with Graeff. *Id.*

During that time, Geyer commented to Graeff that she could sue him for age discrimination. Graeff responded, "oh you could get me on more than that." *Id.*

Geyer returned to Graeff's room to gather her belongings and change out of her bathing suit so she could leave. When Geyer exited the bathroom, Graeff was shirtless (he wore a shirt at the water park) and said to her "are you sure I can't change you?" *Id.* at 40. Geyer understood this to be a reference to her sexual orientation as Graeff was aware that Geyer was married to a woman.[1] As Geyer left, Graeff gave her a hug and kissed her on the cheek. He told her, "I may have crossed the line today." *Id.*

The next day at work, Geyer told the secretary and, later that same day the township manager, what happened. Geyer was encouraged to put her statement in writing, which she did. By the end of that week, Graeff was placed on paid leave pending an internal investigation. About a month later, police opened a criminal investigation. On September 7, 2022, under the direction of the lead detective, Geyer made a recorded phone call to Graeff during which Graeff apologized to Geyer.

Graeff was charged with one count of indecent assault and the matter proceeded to a jury trial on August 14, 2024. Geyer testified to her version of

_____

[1] In 2017, Graeff explicitly asked Geyer about her sexual orientation.

events as stated above. Graeff testified to his own version of events.[2] Generally, Graeff testified that he never made any sexually suggestive comments to Geyer, or he only made them in a friendly joking manner, and that when they went down the water slide together he lost his balance and inadvertently touched Geyer's breasts with an open hand. Further, he testified that on the recorded phone call he apologized to Geyer because he was instructed by the township not to discuss the incident with anyone in the police department and because the incident was an accident. The jury found Graeff guilty of indecent assault.

On December 17, 2024, Graeff was sentenced to sixty days to two years' incarceration. Graeff filed a post-sentence motion, which the trial court denied after a hearing. Graeff timely appealed. Graeff and the trial court both complied with Pennsylvania Rule of Appellate Procedure 1925.[3] *See* Pa.R.A.P. 1925(a)-(b).

Graeff raises the following issues for our review.

1. Was the evidence insufficient to establish beyond a reasonable doubt the charge of indecent assault?

_____

[2] The remaining testimony came from the lead detective and three character witnesses who testified on Graeff's behalf.

[3] The trial court wrote a brief statement in which it referred to the portion of the post-sentence motion hearing transcript where it explained on the record why Graeff's weight and sufficiency claims lack merit. *See* Trial Court Opinion, 7/15/25, at 1-2.

2. Did the [trial c]ourt abuse its discretion in denying [Graeff's] postsentence motion seeking a new trial because the verdict was against the weight of the evidence?

Appellant's Brief, at 4.

In his first issue, Graeff challenges the sufficiency of the evidence. "Because a determination of the sufficiency of the evidence presents a question of law, our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Bettis**, 347 A.3d 779, 786-87 (Pa. Super. 2025) (internal quotation marks and citation omitted). Further, the following well-established principles guide our review:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for a fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence received must be considered. Finally, the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Haahs**, 289 A.3d 100, 104 n.2 (Pa. Super. 2022) (citation omitted). Moreover, "the uncorroborated testimony of the complaining witness is sufficient to convict a defendant of sexual offenses."

- 5 -

*Commonwealth v. Cramer*, 195 A.3d 594, 602 (Pa. Super. 2018) (citation omitted).

To establish the crime of indecent assault, the Commonwealth must prove:

> **(a) Offense defined.—**A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:
>
> (1) the person does so without the complainant's consent[.]

18 Pa.C.S.A. § 3126(a)(1).

Indecent contact is "[a]ny touching of the sexual or intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person."[4] 18 Pa.C.S.A. § 3101. "[T]he Commonwealth need not establish skin to skin contact to sustain a conviction of indecent assault." *Commonwealth v. Gilliam*, 249 A.3d 257, 268 (Pa. Super. 2021) (internal quotation marks and citations omitted). Additionally, as with any element of a criminal offense, "[t]he element that the touching was done for the purpose of arousing or gratifying sexual desire can be proven by circumstantial evidence."

---

[4] It is undisputed that a woman's breasts constitute "sexual or intimate parts." *See Commonwealth v. Richter*, 676 A.2d 1232, 1236 (Pa. Super. 1996).

- 6 -

***Commonwealth v. Wood***, 346 A.3d 344, 2025 WL 2320254, at *4 (Pa. Super. filed Aug. 12, 2025) (unpublished memorandum).[5]

Graeff argues that there was insufficient evidence that he intentionally touched Geyer's breasts for his own sexual gratification. ***See*** Appellant's Brief, at 18. He argues that the evidence demonstrated that his contact with Geyer was inadvertent because, during the ride, he did not have a front view of Geyer and he was not securely seated in the water tube and lost his balance. ***See id.*** at 19-20. Further, he argues that his suggestive comments to Geyer were insufficient to establish that he touched Geyer's breasts for sexual gratification.[6] ***See id.*** at 21-22.

Graeff's argument is merely a disagreement with the jury believing Geyer's version of events rather than his own. The trial court aptly summarized the evidence that supported the verdict.

> [W]ith respect to the sufficiency of the evidence, there was ample evidence to support this verdict. [. . .] Ms. Geyer testified that as she and [Graeff] went down a waterslide, at the waterpark to which she was invited to a police conference, he grabbed her

---

[5] Unpublished memorandums filed after May 1, 2019 may be cited for their persuasive value. ***See*** Pa.R.A.P. 126(b).

[6] Graeff stops short of arguing that Geyer consented to Graeff touching her breasts and concedes that Geyer did not give Graeff "explicit consent to have sexual contact[.]" Appellant's Brief, at 21. However, he asserts that Geyer's comments "could have created a belief that she consented to being grabbed by [Graeff] during the slide[,]" and "created a certain tone for the day." ***Id.*** at 18, 21. Because Graeff does not fully argue that Geyer consented to him grabbing her breasts we need not discuss the issue of consent in detail. We merely note that Geyer clearly testified that she did not consent to Graeff grabbing her breasts. ***See*** N.T., 8/14/24, at 38, 52.

breasts, was making noises, she became mortified, and she also indicated that she did not consent to that touching. By itself, that's enough to support the verdict and conviction[.]

. . . .

I will also note, as [the Commonwealth] mentioned, that the testimony doesn't stand alone in this matter. There were other parts of Ms. Geyer's testimony that if believed by the jury were sufficient to demonstrate the crime and or the elements thereof, but in addition to that there [were], [. . .] statements made by [Graeff] with respect to his knowledge that what had happened wasn't right, as we heard from [the Commonwealth] and Ms. Geyer, who is in[ . . .] a lesbian relationship and is married, [that Graeff] said he wanted to turn her or change her, or words to that effect. There was also the consensual phone call during which there were apologies made, and there were other statements in which [Graeff . . .] acknowledged enough, that if believed by the jury, that he was at least acknowledging that an incident and the touching occurred.

. . . .

With respect to the [element of arousing or gratifying sexual desire, . . .] I think that inviting a subordinate to a [police] chief's meeting at a waterpark, having her change in your room, making the comments that [Graeff] made to her, grabbing and touching her breasts on the waterslide, and making noises at the time, and the effect it had, and then later saying that he was trying to change her sexuality, is much more than enough to support the element of the offense that would require someone to demonstrate that the touching was for the purpose of arousing sexual desire in one or both of them.

N.T., 5/2/25, at 10-14 (paragraphs added).

Geyer testified that Graeff did not merely touch her breasts but "grabb[ed]" and "massag[ed]" them while saying "oh, yeah." This testimony alone was sufficient for the jury to infer that Graeff grabbed and massaged Geyer's breasts for the purpose of gratifying his sexual desire. **See Gilliam**,

- 8 -

249 A.3d at 267-68. Geyer's testimony about Graeff's suggestive comments before and after the incident lend further support to this inference. Therefore, Graeff's sufficiency claim fails.

In his second issue, Graeff challenges the weight of the evidence.

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. When a trial court considers a motion for a new trial based upon a weight of the evidence claim, the trial court may award relief only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. The inquiry is not the same for an appellate court. Rather, when an appellate court reviews a weight claim, the court is reviewing the exercise of discretion by the trial court, not the underlying question of whether the verdict was against the weight of the evidence. The appellate court reviews a weight claim using an abuse of discretion standard.
>
> At trial, the jury [is] the ultimate fact-finder and the sole arbiter of the credibility of each of the witnesses. Issues of witness credibility include questions of inconsistent testimony and improper motive. A jury is entitled to resolve any inconsistencies in the Commonwealth's evidence in the manner that it sees fit.

***Commonwealth v. Jacoby***, 170 A.3d 1065, 1080 (Pa. 2017) (quotation marks and citations omitted).

Graeff argues that the verdict was against the weight of the evidence because Geyer was not credible and he presented three character witnesses who testified about his reputation as a law-abiding, peaceful, and truthful person. ***See*** Appellant's Brief, at 25-32. Graeff argues that Geyer was not credible because her comments and actions before and after the incident

- 9 -

contradicted her testimony that she felt uncomfortable with Graeff and that he intentionally grabbed her breasts. *See id.* at 27-30. Further, Graeff claims that Geyer was motivated to lie because, when he was suspended, she was promoted to interim chief of police. *See id.* at 28-29.

At the post-trial motion hearing, after explaining why Graeff's sufficiency claim was without merit, the trial court addressed Graeff's weight claim.

> With respect to the weight of the evidence, I really don't need to say much, it's really the same thing. The jury heard all the evidence, the jury decided this. There is absolutely no reason, in fact the weight claim to me is frivolous, and there is no reason for this Court, or any other court for that matter, to impact or take away the province of the jury with respect to the weight claim.

N.T., 5/2/25, at 14.

We discern no abuse of discretion with the trial court denying Graeff's weight of the evidence claim. The jury clearly credited Geyer's version of events. It was the jury's role to make this credibility determination including resolving inconsistencies and assessing the witnesses' motives. *See Jacoby*, 170 A.3d at 1080. The arguments asserted by Graeff that the verdict is so contrary to the evidence as to shock one's sense of justice are unpersuasive. Therefore, Graeff is not entitled to relief.

Accordingly, we affirm Graeff's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>4/30/2026</u>